**Harrison COMBS, et al., Plaintiffs,**

v.

**SUN–UP COAL COMPANY, INC., et al., Defendants.**

**Civ. A. No. 84–2931.**

United States District Court, District of Columbia.

June 25, 1985.

Rodney F. Page, E. Calvin Golumbic, Howard P. Possick, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiffs; William F. Hanrahan, General Counsel, Gerald E. Cole, Jr., Deputy General Counsel, Israel Goldowitz, Asst. General Counsel, United Mine Workers of America Health and Retirement Funds, Washington, D.C., of counsel.

Jeffrey A. Norris, McGuiness & Williams, Washington, D.C., for defendants Murry Webb, Clement Webb, Jr., and Harry J. Aldridge, C.V. Stelzenmuller, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., of counsel, Albert E. Ritchey, Ritchey & Ritchey, Shel-Al Building, Birmingham, Ala., of counsel.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

Plaintiffs, the trustees of the United Mine Workers of America 1950 and 1974 Pension Plans, brought this action pursuant to the Employee Retirement Income Security Act (ERISA), as amended by the Multi-employer Pension Plan Act Amendments (MPPAA), 29 U.S.C. §§ 1001 *et seq.*, to collect withdrawal liability. Defendant Sun-Up Coal Company, an Alabama corporation which was engaged in the coal mining business, was a party to the National Bituminous Coal Wage Agreements of 1974 and 1978. Under these agreements, Sun-Up was obligated to make contributions to the Plans on behalf of its employees covered under the Agreements. Sun-Up, in fact, made contributions to the Plans until March 26, 1981, at which time it ceased to be a participating employer and withdrew completely from the Plans. Thereafter, plaintiffs notified Sun-Up of its withdrawal liability to the Plans. When their efforts to collect the amount of withdrawal liability from Sun-Up proved unsuccessful, plaintiffs filed the instant action against Sun-Up and three individuals—Murry Webb, Clement Webb, Jr., and Harry J. Aldridge, the officers and sole shareholders of Sun-Up—to collect $163,660.91, the amount of unpaid contributions due under the 1950 and 1974 Plans, as well as interest on such unpaid contributions, liquidated damages, attorneys' fees and costs.

The three individual defendants have filed a motion to quash service of process and to dismiss the complaint against them for lack of personal jurisdiction.[1] In support of their motion, defendants argue that, in the absence of any claim that the corporate identity of Sun-Up should be disregarded, they cannot be considered employers for purposes of assessing withdrawal liability under subchapter III of ERISA, and that they are therefore not subject to the Court's jurisdiction. Plaintiffs maintain that these defendants are employers within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), because as officers and the sole shareholders of Sun-Up, they acted directly or indirectly in the interest of that company in relation to the Plans, and are therefore jointly and severally liable for the withdrawal liability of Sun-Up pursuant to section 4201(a), 29 U.S.C. § 1381(a).

The crux of this matter is who, in addition to the signatory company, can be considered an "employer" for purposes of assessing withdrawal liability. Title IV of the ERISA, which governs an employer's withdrawal liability,[2] does not define the term employer. However, this term is de-

---

1. To date, Sun-Up, the corporate defendant, has neither filed an answer nor otherwise responded to the complaint.

2. Withdrawal liability is an employer's long term debt to a plan for any unfunded vested benefits attributed to its employees once that employer ceases its participation. 29 U.S.C. § 1381.

fined in section 3(5) of Title I of ERISA, 29 U.S.C. § 1002(5), to mean

> any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employee in such capacity.

It is this definition upon which plaintiffs rely to support their claim that defendants, as officers and sole shareholders of Sun-Up, are employers because they "acted directly or indirectly in the interest of Sun-Up Coal." Opposition Brief at 3, 9–10.

■ As plaintiffs themselves concede, however, the definition of "employer" set forth in section 3(5) is limited by the introductory phrase to section 3 "For purposes of this subchapter....:" Thus, the definition quoted above applies only to subchapter I of the ERISA, and not to subchapter III—the subchapter at issue here, and the cases cited by plaintiffs which construe the term "employer" in the context of actions to collect delinquent contributions under collective bargaining agreements and under Title I of the ERISA are arguably inapposite.[3]

Indeed, in one of the cases cited by plaintiffs where the personal liability of a dominant corporate officer and shareholder was at issue, the court expressly distinguished between actions to collect delinquent contributions under a collective bargaining agreement and under Title I and actions to collect withdrawal liability under Title IV. See *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.*, 635 F.Supp. 9 (D.Mass.1984). In that case, the court permitted plaintiffs to amend their complaint to add three individual officers as defendants. In doing so, however, it specifi-

cally reserved judgment on whether these individuals could be held personally liable as "employers" under Title I of ERISA or under section 301 of the Labor Management Relations Act for delinquent contributions. The court, upon noting defendants' concern that its decision could be a precedent for imposing personal liability for withdrawal liability, explicitly stated that withdrawal liability was not an issue in the case. It then referred to an opinion letter drafted by the Pension Benefit Guarantee Corporation (PBGC), the corporation created under ERISA to administer Title IV,[4] concerning personal liability of officers and shareholders for withdrawal liability. In that letter, the PBGC stated that "... ERISA has no special rules regarding shareholder or officer liability ... [Rather], this issue is usually determined by state law which generally provides that shareholders are not liable for the debts of a corporation. You should, however, be aware that the laws of every state contain exceptions to this general principle." *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.*, C.A. No. 83–2872–MA (D.Mass. Oct. 12, 1984), slip op. at 12 n. 3, *quoting* PBGC opinion letter 82–038 (Dec. 14, 1982). The court concluded that this opinion letter was "[not] a compelling reason to foreclose the opportunity for individual liability under ERISA *in its entirety.*" *Id.* (emphasis supplied).

It should be noted that in a subsequent opinion letter supplied by plaintiffs in this action, the PBGC, while noting that "Title IV does not define 'employer' for purposes of assessing withdrawal liability," stated that it viewed the definition contained in section 3(5) of Title I as "an appropriate definition for determining whether a *business* is liable under Title IV under the circumstances [described in the request for PBGC's opinion]."[5] Opinion letter by Hen-

---

**3.** See *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.*, C.A. No. 83–2872–MA (D. Mass. Oct. 12, 1984). *Alman v. Servall Manufacturing Co.*, No. 82–0746–MA (D. Mass. April 9, 1984); *Amalgamated Cotton Garment & Allied Industries Fund v. JBC Co. of Madera*, No. 81–1610 (W.D.Pa. Oct. 20, 1982); See also, *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983).

**4.** If an employer does not pay its liability, PBGC will satisfy the employer's benefit obligations to the fund and lodge a claim against the delinquent employer. 29 U.S.C. § 1368.

**5.** The requester sought PBGC's opinion concerning the meaning of "employer" as that term is used in Title IV—the precise issue here—but in

ry Rose, General Counsel for PBGC dated December 27, 1984 (emphasis supplied). The PBGC explained its reasoning in a footnote as follows:

> Title I definitions are limited "[f]or purposes of this title"; thus, they are not necessarily applicable to Title IV. See *Nachman v. PBGC*, 446 U.S. 359, 370 and n. 14 [100 S.Ct. 1723, 1730 and n. 14, 64 L.Ed.2d 354] (1980). However, in the absence of an express Title IV definition or regulatory guidance by PBGC, guidance may be sought in Title I where it does not conflict with the purposes of Title IV.

*Id.*

Defendants suggest that applying the broad definition of "employer" in section 3(5) to Title IV may, in fact, be inconsistent with the purposes of that Title. Withdrawal liability, they allege, is governed not only by different statutory language but also by different policy considerations than those underlying the pension contributions provisions of Title I. Unlike the actions brought to collect delinquent pension contributions or unpaid wages, withdrawal liability situations often occur in the absence of any nonfeasance or misfeasance by any individual with fiduciary responsibilities. Accordingly, the rationale for holding individuals personally liable as employers for unpaid wages or pension contributions is often inapplicable.

In further support of their argument that section 3(5)'s definition of "employer" is inapplicable, defendants cite to section 4225 of ERISA, 29 U.S.C. § 1405, which provides for limitations on the withdrawal liability of an employer that sells its assets or that becomes insolvent. The Court too finds it puzzling that if Congress had intended shareholders and officers to be personally responsible for unpaid benefits, it would have included provisions limiting the

withdrawal liability of an employer to a portion of its liquidation or dissolution value. Moreover, in the case of sole proprietorships and partnership, subsection (c) specifically exempts certain property from enforcement actions:

> (c) Property not subject to enforcement of liability; precondition.

> To the extent that the withdrawal liability of an employer is attributable to his obligation to contribute to or under a plan as an individual (whether as a sole proprietor or as a member of a partnership), property which may be exempt from the estate under section 522 of Title 11, or under similar provisions of law, shall not be subject to enforcement of such liability.

The policy behind this limitation is explained in the legislative history:

> Limitations on withdrawal liability—
>
> \*   \*   \*   \*   \*   \*
>
> c. *Individual employers*: The Committees recognize that some employers that are obligated to contribute to multiemployer plans are individuals, *i.e.*, sole proprietors, or partners. The Committees believe that if such an employer withdraws from a multiemployer plan, some of the employer's personal assets, such as his residence, should be shielded from employer liability. A special rule provides that where the withdrawn employer is an individual, the employer's personal assets that would be exempt under bankruptcy law will be protected from employer liability.

126 Cong.Rec. S 10117 (daily ed. July 29, 1980).

The references to "sole proprietors" and "partners" and the limitation of personal liability for such individuals further indicates that Congress did not intend to have corporate officers and shareholders held

---

the context of the garment industry where a contractor is generally the common law employer of employees covered under the pension plan, but where a jobber or manufacturer who contracts with the contractor often has the obligation under its collective bargaining agreement to contribute to the pension plan based on the

contracted for work. The Court notes that the advice requested did not concern whether an individual, *i.e.*, a shareholder or corporate officer, could be held personally liable, but rather concerned the joint or several liability of particular business entities.

personally liable for their corporation's withdrawal liability.

▪ Based on these provisions, the Court finds defendants' argument persuasive. To be sure, the legislative history reveals that Congress was concerned that the term "employer" be construed in a manner consistent with the Act and its purpose, and that employers not be able to evade or avoid withdrawal liability through changes in identity, form of control, or through transactions which were not bona fide or at arms' length. See 126 Cong.Rec. H 7898 (daily ed. August 26, 1980); 126 Cong.Rec. S 10105 (daily ed. July 29, 1980). However, to accomplish this goal, Congress adopted specific provisions to guard against such maneuvers. See, e.g., section 4212(c), 29 U.S.C. § 1392(c) (transaction to evade or avoid liability shall be ignored for purposes of applying subchapter III); section 4218, 29 U.S.C. § 1398 (withdrawal from plan does not occur when employer changes its corporate structure or business form). Moreover, section 4001(b)(1), 29 U.S.C. § 1301(b)(1), specifies that in the case of a sole proprietorship and partnership, the sole proprietor and the partnership, respectively, are treated as a single employer for purposes of subchapter III. There is nothing in the statutory language or legislative history which indicates that Congress intended the corporate identity be disregarded and corporate officers and shareholders held personally liable for withdrawal liability.

Notwithstanding the differences in statutory language and the different policy considerations underlying Titles I and IV, plaintiffs argue that the broad definition of "employer" in Title I applies here.[6] In fact, several courts have applied the definitions of terms listed in section 3, including that for "employer," to govern the construction of those same terms used in other titles of ERISA. See, e.g., *Central Pennsylvania Teamster's Pension Fund v. Service Group, Inc.*, 6 EBC 1491, 1492 (E.D. Pa.1985), and cases cited therein.[7] See also *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947, 952–53 and n. 6 (7th Cir.1979), aff'd, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) ("An earlier specific definition may properly color a subsequent use of the same words without redefinition").

However, even assuming that the definition of "employer" urged by plaintiffs does apply, the complaint against the individual defendants would still have to be dismissed. Despite the broadly inclusive definition of "employer" set forth in section 3(5), no court has construed it literally. If it were given such an expansive meaning, every agent or employee with some supervisory power over other employees could be included within such term. Indeed, there is a split in authority over whether corporate officers and dominant shareholders can ever be considered "employers" within the meaning of section 3(5). While some courts have expressly held that they are not,[8] other courts, relying on *Donovan*

---

6. Plaintiffs argue that section 3(5)'s definition of "employer" applies to this case since the withdrawal liability provisions of Title IV refer specifically to Title I provisions. Thus, section 4301(b) provides that
   In any action under [Title IV] ... to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 [of Title I] ).
   29 U.S.C. § 1451(b). Plaintiffs argue further that it would be anomalous to find that an employer who is subject to liability for withdrawing from a multiemployer plan under Title IV is different from the employer who is required to make contributions to such a plan

under section 515 of Title I, 29 U.S.C. § 1145, and who is subject to a judgment if he fails to do so under 29 U.S.C. § 1132(g)(2).

7. The Court notes that in *Central Pennsylvania Teamster's, supra,* the issue was not whether a stockholder or corporate officer could be considered an "employer," but rather involved a dispute between two separate contracting companies over which company was responsible for the withdrawal liability allegedly due.

8. See, e.g., *Combs v. Indyk,* 554 F.Supp. 573, 575 (W.D.Pa.1982); *Solomon v. Klein,* 6 EBC 1368 (E.D.Pa.1985); *Paperworkers Pension Plan v. Arlington Sample Book Co.,* 5 EBC 1948, 1951 (E.D.Pa.1984).

v. *Agnew,* 712 F.2d 1509 (1st Cir.1983), which construed a similar definition of "employer" under the Fair Labor Standards Act,[9] have held that corporate officers with operational control of the corporation may fall within the definition of "employer." [10] However, even in the latter category of cases, the mere fact that someone is a corporate officer or dominant shareholder was held not to be enough to hold that person jointly and severally liable for the corporation's failure to pay. The courts involved have refused to impute to Congress an intent to disregard the shield from personal liability which is one of the major purposes of doing business in a corporate form, and instead have adopted varying standards for determining under what circumstances individual corporate officers or shareholders can be held personally liable for the corporation's unpaid contributions.

For example, the Ninth Circuit in *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513 (9th Cir.1984), rejected the trustee's argument that Reed, the majority shareholder and chief executive officer of the defaulting business which he had previously operated as a sole proprietorship, could be held personally responsible for unpaid contributions under ERISA. In determining whether an owner of a corporation can be held personally liable for trust fund contributions owed by the corporation, the court considered the following three factors: (1) the amount of respect given to the separate identity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators. 726 F.2d at 515. See also, *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 764 (9th Cir.1981); *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1109–14 (9th Cir.1979). Because plaintiffs had not adduced any evidence indicating that any of these three factors were present, the court dismissed their complaint against Reed.[11]

By contrast, other courts have adopted a more expansive definition of the term "employer," rejecting the argument that officers in a bona fide corporation can never be held personally liable for unpaid contributions. Thus, in *Donovan v. Agnew, supra,* the court found that corporate officers could be held personally accountable for the corporation's backpay liability absent circumstances equivalent to those that would justify piercing the corporate veil at common law. 712 F.2d at 1512. The court, however, refused to accept the Secretary's contention that Congress intended to hold any corporate officer or other employee with ultimate operational control over payroll matters personally liable for the corporation's failure to pay minimum and overtime wages as required by the FLSA.[12] Applying an "economic reality" analysis to

9. Section 3(d) of the Fair Labor Standards Act defines "employer" to mean "any person acting directly or indirectly in the interest of an employer." 29 U.S.C. § 203(d).

10. *Alman v. Servall Manufacturing Co.,* No. 82–0746–MA (D.Mass. April 9, 1984); *Amalgamated Cotton Garment & Allied Industries Fund v. JBC Co. of Madera,* No. 81–1610 (W.D.Pa. October 20, 1982).

11. See also, *Moyers v. Frank P. Bauer Marble Co.,* 556 F.Supp. 192, 194 (N.D.Ill.1983) (claims against three individual defendants for failure to make contributions were dismissed when plaintiffs failed to assert that they were the alter ego of the corporate defendant and no other reason was given why the corporate entity should be ignored so that the individual defendants could be held personally liable); *Solomon v. Klein,* 6 EBC 1368, 1369 (E.D.Pa.1985) (chief executive officer and 50% shareholder of corporation was not personally responsible for remaining amounts due under collective bargaining agreements where parties stipulated that there was no basis for court to proceed on a theory that the corporate veil should be pierced).

12. In reaching this conclusion, the court in *Donovan* stated that it did not think "too much weight can be put on the Act's broadly inclusive definition of 'employer.' Taken literally and applied in this context it would make any supervisory employee, even those without any control over the corporation's payroll, personally liable for the unpaid or deficient wages of other employees. It makes more sense ... to interpret the language as intended to prevent employers from shielding themselves from responsibility for the acts of their agents." 712 F.2d at 1513.

determine the scope of the employment relationship, the court ultimately found that, under the circumstances of the case, the two corporate officers could be held personally liable for the unpaid wages. The officers in *Donovan* not only had a significant ownership interest in the corporation, but they also had operational control of significant aspects of the corporation's day to day functions, including compensation of employees, and they had personally made decisions to continue operations despite financial adversity during the period of non-payment. 712 F.2d at 1514.[13]

In the context of imposing withdrawal liability, the Court finds that the standard applied by the Ninth Circuit is the more appropriate one. However, even under the more inclusive "economic reality" approach used by the *Donovan* court, plaintiffs have failed to allege any facts which would support their claim that the individual defendants here are "employers" within the meaning of section 3(5). Plaintiffs have alleged only that these defendants were the officers and sole shareholders of Sun-Up. There is nothing in the record to suggest that they were the alter ego of the corporation or were otherwise personally responsible for the corporation's withdrawal from the Plans. The Court also notes that these defendants were not given any notice or an opportunity to individually appeal and arbitrate the assessment as required under sections 4219 and 4221 of ERISA, 29 U.S.C. §§ 1399 and 1401. Accordingly, plaintiffs' complaint against them could also be dismissed on this basis.

Moreover, dismissal of the individual defendants from this action will not leave plaintiffs without a remedy—they may still prosecute their claim against Sun-Up and they may proceed under state law in state court against the individual defendants for an appropriate remedy, see *Solomon v. Klein*, 6 EBC 1368, 1369–70 (E.D.Pa.1985). In addition, plaintiffs may, if they discover any facts indicating that defendants were personally responsible for the decision to withdraw from the Plan which might justify the imposition of personal liability, move to amend their complaint.

Finally, with respect to the complaint against the corporate defendant Sun-Up Coal Company, plaintiffs have taken no action to prosecute their claims against it since they filed the complaint. Accordingly, unless the plaintiffs either move to have a default entered against Sun-Up or otherwise show cause why their claims against the company should not be dismissed, the Court will dismiss their complaint against Sun-Up for lack of prosecution.

For the reasons stated, it is this 5th day of June, 1985

ORDERED that the motion of defendants Murry Webb, Clement Webb, Jr., and Harry J. Aldridge to dismiss for lack of personal jurisdiction be and it is hereby granted; and it is further

ORDERED that the complaint against defendants Murry Webb, Clement Webb, Jr., and Harry J. Aldridge be and it is hereby dismissed; and it is further

ORDERED by the Court *sua sponte* that if plaintiffs do not move to have a default entered against Sun-Up Coal Company by June 28, 1985, this action will be dismissed for failure to prosecute.

---

**13.** See *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.*, 635 F.Supp. 9 (D.Mass.1984); *Alman v. Servall Manufacturing Co.*, No. 82–0746–MA (D.Mass. April 9, 1985); *Amalgamated Cotton Garment & Allied Industries Fund v. JBC Company of Madera*, No. 81–1610 (W.D.Pa. Oct. 20, 1982) (applying similar analysis in actions under ERISA to collect delinquent contributions).