Joseph P. CONNORS, Sr., et al., Plaintiffs,

v.

B.M.C. COAL COMPANY, et al., Defendants.

Civ. A. No. 85–1511.

United States District Court, District of Columbia.

Feb. 4, 1986.

E. Calvin Golumbic, Rodney F. Page, R. Steven Holt, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiffs.

Richard A. Gladstone, Gregory E. Mayes, Lester A. Adams, Barnett & Alagia, Washington, D.C., for defendants.

MEMORANDUM

OBERDORFER, District Judge.

I.

Plaintiffs are the Trustees of the United Mine Workers of America 1950 and 1974 Pension Plans. They bring this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1381, *as amended by* the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. §§ 1381–1461 (1982), against B.M.C. Coal Company, and its president, Mitchie Coleman, to collect withdrawal liability payments. According to the plaintiffs, defendants incurred withdrawal liability under ERISA in 1981 when B.M.C. failed to sign the 1981 Bituminous Coal Wage Agreement. The Plan notified B.M.C. of its withdrawal liability in March of 1982. In June of 1982, defendants requested informal review of the withdrawal liability determination pursuant to Section 4219(b)(2)(A) of ERISA, 29 U.S.C. § 1399(b)(2)(A). The Trustees of the Plan responded that they would not change the withdrawal liability, but would alter the schedule of payments.

Defendants did not initiate arbitration within the time specified in Section 4221(a) of ERISA, 29 U.S.C. § 1401(a). Points and Authorities of Defendants B.M.C. Coal Company, Inc. and Mitchie Coleman In Sup-

port of Motion for Summary Judgment (Defendants' Mem.) at 8 n. 5 (filed Dec. 31, 1985). In August, 1983, the Trustees demanded all past due withdrawal liability payments and indicated that if payment was not made by the date specified, defendants' entire withdrawal liability would be due without further demand. Defendants have not made any withdrawal liability payment. The Trustees thus filed a complaint in this Court for the payments alleged to be due. The action is now before the Court on the parties' cross-motions for summary judgment, both filed Dec. 31, 1985.

## II.

The Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), Pub. L. 96–364, 94 Stat. 1208 (1980), added subtitle E to Title IV of ERISA. The MPPAA establishes withdrawal liability for employers that cease participation in a multiemployer pension plan, as well as means for computing that liability. Complete withdrawal from a multiemployer pension plan occurs when an employer either permanently ceases to have an obligation to contribute under the plan or permanently ceases all operations covered under the plan. 29 U.S.C. § 1383. At the time that an employer withdraws from a plan, the plan is required by the MPPAA to determine the amount of the employer's withdrawal liability, and notify the employer of the amount. 29 U.S.C. § 1382.

ERISA provides for informal review of the withdrawal liability amount within 90 days of notice of, and demand for, the amount. 29 U.S.C. § 1399(b)(2). If the informal dispute resolution is unsuccessful, ERISA provides that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 U.S.C. §§ 1381–1399] shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). After completion of the arbitration proceedings and entry of the award, either party may bring an action in federal district court to enforce, vacate or modify the arbitrator's award. 29 U.S.C.

§ 1401(b)(2). It is undisputed that defendants did not initiate arbitration within the time specified under ERISA. Defendants' Mem. at 8 n. 5.

■ Plaintiffs argue that failure to initiate arbitration precludes an employer from contesting either the fact or the amount of its withdrawal liability, citing *Combs v. Western Coal Corp.*, 611 F.Supp. 917, 920–22 (D.D.C.1985). Defendants argue that this Court may consider their challenge to plaintiffs' determination of withdrawal liability despite their failure to seek arbitration. Plaintiffs cite *I.A.M. National Pension Fund Benefit Plan C v. Stockton Tri Industries*, 727 F.2d 1204 (D.C.Cir.1984). But, this Court has specifically recognized that *Stockton* creates only a narrow exception to the general requirement that parties seek arbitration under ERISA. *The Grand Union Company v. The Food Employers Labor Relations Association and United Food & Commercial Workers Pension Fund*, No. 85–1551, slip op. at 2–8 (D.D.C. Oct. 25, 1985). Here, the issues of whether the employer has completely withdrawn and if so, the amount of the liability, are quintessentially within the expertise of an arbitrator skilled in pension matters. Consequently, the narrow exception established by *Stockton* does not apply. Defendants' failure to seek arbitration now precludes them from seeking a determination by this Court that they have not completely withdrawn from the Plan under 29 U.S.C. § 1383(a).

## III.

Defendants primarily contest plaintiffs' attempt to hold defendant Mitchie Coleman personally liable for the withdrawal liability of B.M.C. Plaintiffs argue that Coleman fits the definition of "employer" set out in Title I of ERISA and thus should be personally liable in this action under Title IV. Title I provides that:

[t]he term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan ...

29 U.S.C. § 1002(5). But, the term "person" as defined in ERISA, does not include a corporate officer. The definition includes "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9). Plaintiffs recognize this, and recognize that the definition of "employer" in Title I contains the preface "For purposes of this title." They nevertheless argue that the definition of "employer" in Title I should apply under Title IV. They argue that because the definition of "employer" in Title I is the same as that found in section 3(d) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(d), it should by analogy apply under ERISA. They rely on *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983) where the court used an "economic reality" test to impose personal liability for unpaid wages under the FLSA. Plaintiffs argue that defendant Coleman, as 50% stockholder and company director, exercised "final operational control" over B.M.C. and thus acted "directly [or] indirectly in the interest of an employer" and should be personally liable for withdrawal payments under ERISA.

This Court has specifically recognized that language by Congress limiting certain other language to a particular title or subtitle of ERISA is significant. *The Grand Union Company, supra,* slip op. at 10. The same is true in this case, and the Court finds the analysis of Judge Greene in *Combs v. Sun-Up Coal Co.,* 634 F.Supp. 13 (D.D.C.1985) persuasive. The court in *Sun-Up Coal Co.* examined the legislative history of ERISA and determined that the definition of "employer" in Title I of ERISA did not apply to Title IV. The court noted that different policy concerns and different statutory language apply to the two different titles in ERISA. It also quoted a 1982 opinion letter drafted by the Pension Benefit Guarantee Corporation (PBGC), the corporation created under ERISA to administer Title IV. In that letter the PBGC stated that:

ERISA has no special rules regarding shareholders or officer liability ... [Rather], this issue is usually determined by state law which generally provides that shareholders are not liable for the debts of a corporation. You should, however, be aware that the laws of every state contain exceptions to this general principle.

PBGC Opinion Letter 82–038 (Dec. 14, 1982) *cited in Sun-Up Coal Co., supra,* at 76 (quoting *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.,* 635 F.Supp. 9, 14 (D.Mass.1984)). The Court specifically distinguished a later PBGC opinion letter supplied by plaintiffs in that, and this, action. In that letter, the PBGC stated that it viewed the definition contained in section 3(5) of Title I as "an appropriate definition for determining whether a *business* is liable under Title IV." Opinion Letter by Henry Rose, General Counsel for PBGC (Dec. 27, 1984), *cited in Sun-Up Coal Co., supra,* 76–77 (emphasis supplied by the *Sun-Up Coal Co.* court). The court also noted that it found it "puzzling" that if Congress had intended individual liability for shareholders and officers it would have included provisions limiting an employer's liability to a portion of its liquidation or dissolution value. Finally, the court noted that the provisions limiting the liability of "sole proprietors" and "partners" were inconsistent with broad individual liability for corporate officers.

The court in *Sun-Up Coal Co.* ultimately found that although a limited definition of "employer" under Title IV was more appropriate, even under the precedent of courts applying the Title I definition to Title IV, e.g., *Donovan, supra,* the defendants in the case before it would not be liable. Other courts, however, have explicitly held that the definition of "employer" under Title I should not be applied to Title IV. In *Solomon v. Klein,* 770 F.2d 352 (3d Cir. 1985), the court was faced with a similar argument by plaintiffs that *Donovan, supra,* decided under the FLSA, should dictate a similarly broad definition of "em-

ployer" under Title IV ERISA. The court stated that:

> we find nothing in the legislative history to indicate that Congress intended to impose a personal liability on a shareholder or a high-ranking officer of a corporation for ERISA contributions owed by the corporation.

770 F.2d at 354. It also tersely discredited a case relied upon by plaintiffs in this action, *Massachusetts State Carpenters Pension Fund, supra:*

> We are not impressed by the Massachusetts district court's analysis. It relied not on the interpretation of the ERISA statute but on the Fair Labor Standards Act and precedents of the First Circuit.

*Id.* The court also quoted *Combs v. Indyk,* 554 F.Supp. 573 (W.D.Pa.1982), where that court faced the same argument as that advanced by plaintiffs in this case:

> Plaintiffs rely on ERISA's inclusion within its definition of employer of "any person acting ... indirectly in the interest of an employer," 29 U.S.C. § 1002(5), as an additional basis for arguing that corporate officers are employers under ERISA. Defendants counter with ERISA's omission of officer from its definition of person; ... Defendants' position is well-taken. There is no indication that Congress intended to expose corporate officers to liability for their employers' violations of ERISA; in fact, the exclusion of corporate officers from the extensive enumeration of persons points in the opposite direction.

*Id.* at 354.

Courts that have refused to apply the broad definition of "employer" in Title I to Title IV have found that the appropriate standard to determine if a corporate officer should be personally liable for ERISA with-

drawal liability payments is whether the officer was acting as the "alter ego" of the corporation so as to justify "piercing the corporate veil." *Solomon, supra,* 770 F.2d at 353–54; *Indyk, supra,* 554 F.Supp. at 574; *United Paperworks International Union, Local No. 35 Pension Plan v. Arlington Sample Book Co.,* No. 83–2828, slip op. (E.D.Pa. May 23, 1984). Moreover, courts have found that where plaintiffs in an ERISA action for payment of withdrawal liability fail to allege that individual defendants should be personally liable under the traditional corporate law concepts of "alter ego" or "piercing the corporate veil," the claim against those defendants should be dismissed. *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513 (9th Cir.1984); *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 764 (9th Cir.1981); *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105, 1109–14 (9th Cir.1979); *Moyers v. Frank P. Bauer Marble Co.,* 556 F.Supp. 192, 194 (N.D.Ill.1983);

■ Here, plaintiffs have not alleged the fraudulent intent necessary to find individual liability either under Kentucky law or general federal rules. *White v. Winchester Land Development Corp.,* 584 S.W.2d 56, 60–63 (Ky.App.1979); *Operating Engineers Pension Trust, supra.* In fact, plaintiffs implicitly concede that no such fraudulent intent exists by not alleging liability under corporate law concepts in the alternative. Because plaintiffs have not alleged facts sufficient to find that defendant Coleman is an "employer" within the meaning of Title IV of ERISA, defendant Coleman is entitled to summary judgment in his favor.*

\*     \*     \*

Accordingly, the accompanying Order will grant plaintiffs' motion for summary

---

\* *See Connors v. Peles Coal Co.,* 637 F.Supp. 321, 324 (D.D.C.1986). In *Peles Coal Co.,* the Court declined to grant the individual defendant's motion to dismiss wherein defendant argued that he was improperly named as an "employer" under ERISA. The Court noted that "resolution of this issue must await fuller development of the factual record. While it seems likely that this issue ... may be resolved on motion for summary

judgment, the allegations of the complaint suffice to withstand the motion to dismiss." *Id.* (citing in footnote 3, *Sun-Up Coal Co., supra,* and noting that "Judge Greene's thorough and persuasive opinion ... well frame[s] the issues for a summary judgment motion with respect to Peles individually.").

judgment as to the withdrawal liability of the corporation and will grant defendants' motion for summary judgment as to the personal liability of defendant Coleman. Both parties have claimed entitlement to attorney's fees and costs for pursuing this action. The Court will reserve this issue pending further submissions by the parties justifying their entitlement to such fees and costs in light of this Memorandum.