Joseph P. **CONNORS**, Sr., et al.

v.

**P & M COAL COMPANY, et al., Appellants.**

No. 85–5738.

United States Court of Appeals, District of Columbia Circuit.

Argued March 17, 1986.
Decided Sept. 12, 1986.

David O. Williamson, Roanoke, Va., for appellants.

E. Calvin Golumbic, with whom Rodney F. Page and William F. Hanrahan, Washington, D.C., were on the brief, for appellees. Howard B. Possick, Washington, D.C., also entered an appearance for appellees.

Robin S. Conrad, Washington D.C., was on the brief for amicus curiae Chamber of Commerce of the United States, urging reversal.

Before GINSBURG, SCALIA and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Appellants Donald Daugherty and Forrest Hall are the sole owners and officers of P & M Coal Company ("P & M"). The question before us is whether Daugherty and Hall, by virtue of their status as owner-officers, are "employers" within the meaning of Title IV of the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), and as such jointly responsible for the statutory liability incurred by P & M on its withdrawal from two multiemployer pension plans. Contrary to the district court, we conclude that ERISA does not impose such personal liability on owner-officers. Therefore, in the absence of any claim or showing of circumstances which, under traditional common law concepts, would justify "piercing the corporate veil," we reverse the district court's order holding Daugherty and Hall jointly liable for the amount owed by P & M to the pension plans.

## I. BACKGROUND

P & M Coal Company is a Kentucky corporation that was organized by Donald Daugherty and Forrest Hall for the purpose of mining coal from a property leased

from another company. Under the terms of the lease, P & M was required to make contributions to the United Mine Workers of America Pension Plans of 1950 and 1974 ("the Plans") on behalf of its covered employees. Daugherty serves as president of P & M and Hall as its vice president and secretary. Each owns fifty percent of the company, and together they operated and managed the business.

Contributions were made to the Plans through 1981. In January 1982, the coal seam P & M was mining became depleted. As a result, P & M ceased operations, and payments to the Plans (which were made on its behalf by the lessor) were discontinued. P & M's attempts to acquire another mining property proved fruitless.

The following year, the Plans' Trustees determined that P & M had completely withdrawn from the Plans within the meaning of ERISA as amended by the Multi-employer Pension Plan Amendments Act of 1980 ("MPPAA"), Pub.L. No. 96–364, 94 Stat. 1208 (1980), 29 U.S.C. § 1001, *et seq.* (1976 and Supp.1981), and notified P & M of its "employer withdrawal liability," namely, the amount P & M was required to pay to the Plans in order to meet its share of unfunded vested benefits as of the date of withdrawal. *Id.* at §§ 1381–1383. After P & M had failed to respond to letters advising it of the total amount of its liability and proposing a schedule of payments, the Trustees notified P & M that its entire withdrawal liability would become due without further demand on December 5, 1983 if all past due payments plus interest were not made by that date. P & M failed to make any of these payments.

On February 23, 1984, the Trustees filed suit against P & M to collect the withdrawal payments, liquidated damages, interest, and attorneys' fees. Seven months later they amended the complaint to add Daugherty and Hall as individual defendants.

On November 6, 1984, Daugherty and Hall filed motions to dismiss the complaint against them on the ground that they were not "employers" within the meaning of section 4201 of ERISA and thus could not be held liable for withdrawal liability under the Act. In an order dated February 6, 1985, the district court denied their motion, stating that the question of their personal liability as statutory "employers" turned on whether it could be proven that they had "significant ownership interest and control over the operation of the corporation and ... were personally involved in matters pertaining to the Pension Plans and to the decision to withdraw." *Combs v. P & M Coal Co.*, No. 84–0560 (D.D.C. Feb. 6, 1985) (Order denying motion to dismiss).

Following cross-motions for summary judgment, the district court ruled on May 31, 1985 that Daugherty and Hall met the criteria set forth in its February 6 Order and held each jointly and severally liable with the corporation for more than $300,000. *Sub nom., Connors v. P & M Coal Co.*, No. 84–0560, slip op. at 7 (D.D.C. May 31, 1985) ("Memorandum Opinion"). Daugherty and Hall appeal both decisions.

## II. DISCUSSION

Withdrawal liability under ERISA is governed by subtitle E of Title IV, which was added to the Act by MPPAA, 29 U.S.C. §§ 1381–1461. Subtitle E imposes withdrawal liability on "an *employer* [who] withdraws from a multiemployer plan." 29 U.S.C. § 1381(a) (emphasis added). Therefore, it is of critical importance to determine the meaning of "employer" within the context of Title IV.

This question has been considered by the United States District Court for the District of Columbia on at least three other occasions. In each case, the court has rejected the contention that owner-officers of a corporation are "employers" within the meaning of Title IV. *Connors v. B.M.C. Coal Co.*, 634 F.Supp. 74, 76–77 (D.D.C. 1986); *Connors v. War-Eagle Coals, Inc.*, No. 85–2123 (D.D.C. Oct. 17, 1985) (Order dismissing action against individual officer and shareholder) [Available on WESTLAW, DCTU database]; *Combs v. Sun-Up Coal Co.*, 634 F.Supp. 13, 18–19 (D.D.C.1985). In the instant case, however, the district court concluded that significant ownership interest in the corporation and substantial

control over corporate operations were in themselves sufficient to hold individual officers and shareholders jointly liable with the corporate employer under the withdrawal liability provisions of Title IV. February 6 Orders; *see* Memorandum Opinion at 7.

We find nothing in either the language or purpose of MPPAA to justify so significant a compromise of the corporate principle of limited liability, nothing to suggest that Congress intended to subject owner-operators of a closely held corporation to personal liability merely because they actively participated in running the business. Acceptance of the district court's "interest and control" test would not only subvert the major purpose of incorporation, but would discourage future participation in multiemployer pension plans—a result that is clearly contrary to one of MPPAA's stated objectives.

### A. *Meaning of "Employer" Under Title IV*

Title IV of ERISA begins with the following declaration:

If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the *employer* is liable to the plan in the amount determined under this part to be withdrawal liability.

29 U.S.C. § 1381(a) (emphasis added). While the word "employer" is not defined in Title IV, the district court accepted the Trustees' contention that the definition of "employer" contained in Title I of ERISA should be applied to Title IV.

Title I defines an "employer" as

*any person* acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

29 U.S.C. § 1002(5) (emphasis added). "Person" is further defined as

an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization.

*Id.* at § 1002(9).

Daugherty and Hall challenge the propriety of applying the Title I definition of employer to Title IV. As they point out, the definitions in Title I are prefaced by the phrase, "For purposes of *this* subchapter" (emphasis added). The definitions, however, appear in subchapter I, while liability withdrawal is governed by subchapter III. They further argue that even if the Title I definitions were found to apply to Title IV, Daugherty and Hall do not fall within the definition of "employer" because neither "corporate officer" nor "shareholder" is to be found in the definition of "person."

Their position finds both general and specific support in judicial interpretations of ERISA and in an opinion letter by the Pension Benefit Guarantee Corporation ("PBGC"), the corporation created under ERISA to administer Title IV. For example, in *Solomon v. Klein*, 770 F.2d 352, 354 (3d Cir.1985), the court wrote:

There is no indication that Congress intended to expose corporate officers to liability for their employers' violations of ERISA; in fact, the exclusion of corporate officers from the extensive enumeration of persons [in Title I] points in the opposite direction.

*See also Combs v. Indyk*, 554 F.Supp. 573, 575 (W.D.Pa.1982). In its opinion letter, the PBGC addressed the specific question of whether a corporation's officers and shareholders can be held financially responsible for their company's withdrawal liability as follows:

ERISA has no special rules regarding shareholder or officer liability.... [Rather], this issue is usually determined by state law which generally provides that shareholders are not liable for the debts of a corporation. You should, however, be aware that the laws of every state contain exceptions to this general principle.

PBGC Opinion Letters 82–038 (Dec. 14, 1982).

The Trustees respond by arguing that "shareholder" and "officer" are subsumed in the word "individual" in the definition of "person," and by citing other interpretations of ERISA (including another PBGC opinion) holding other Title I definitions to be applicable to Title IV. *See, e.g., Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947, 952 (7th Cir.1979), *aff'd*, 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980); PBGC Opinion L84–9 (Dec. 27, 1984). They also point to the interpretation, in *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983), of an identical definition of "employer" in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, as embracing shareholders who have a significant ownership interest in, and operational control over, a corporation. Because the owner-officers in *Donovan* had "personally made decisions to continue operations despite financial adversity," the court concluded that considerations of "economic reality" required that they be held personally liable for minimum and overtime wages owed their company's employees under FLSA. 712 F.2d at 1514.

Relying on this interpretation, the Trustees argue that the district court was correct in holding that as Daugherty and Hall "had significant ownership interests and control over the P & M operation and ... were personally involved in matters pertaining to the Plans," they were personally liable for P & M's obligations to the plans. Memorandum Opinion at 7.

■ We cannot agree that the language or purpose of MPPAA permits so broad an interpretation of the word "employer" in section 1391 as to accommodate an "interest and control" or "economic reality" test. Personal financial responsibility may not be imputed to owner-officers simply because of the size of their ownership or the extent of their control over their company's affairs.

In reaching this conclusion, we need not decide the scope to be given the word "employer" in Title I of ERISA, as we are dealing with a separate subchapter of that statute. Nor need we consider the question of the general applicability of Title I definitions to Title IV. It suffices that we can find nothing within the language or structure of MPPAA that requires us to accept the Trustees' interpretation. On the other hand, we find ample reason to conclude the contrary.

In the first instance, the principle of limited liability is so fundamental to our corporate law that we require more than an expansive interpretation of a definition in Title I to persuade us that Congress intended the word "employer" in Title IV to encompass owner-officers acting within the legitimate scope of their corporate responsibilities. As Judge Greene points out in his opinion in *Combs v. Sun-Up Coal Co.*, even *Donovan* does not hold that "the mere fact that someone is a corporate officer or dominant shareholder ... [is] enough to hold that person jointly and severally liable for the corporation's failure to pay" or "to impute to Congress an intent to disregard the shield from personal liability which is one of the major purposes for doing business in a corporate form." 634 F.Supp. 13,

As Judge Greene's *Sun-Up* opinion also indicates, the Trustees' reading of "employer" to include owner-officers produces a "puzzling" result in light of the provisions of section 4225 of ERISA, 29 U.S.C. § 1405, which place limitations on withdrawal liability in the case of an employer's liquidation or dissolution. These limits are stated in terms of percentages of "liquidation or dissolution value," except that

> [t]o the extent that the withdrawal liability of an employer is attributable to his obligation to contribute to or under a plan as an individual (*whether as a sole proprietor or as a member of a partnership*), property which may be exempt from the estate under section 522 of [the Bankruptcy Act], or under similar provisions of law, shall not be subject to enforcement of such liability.

29 U.S.C. § 1405(c) (emphasis added). The policy behind this provision is explained as follows:

*The Committees recognize that some employers that are obligated to contribute to multiemployer plans are individuals, i.e., sole proprietors, or partners.* The Committees believe that if such an employer withdraws from a multiemployer plan, some of the employer's personal assets, such as his residence, should be shielded from employer liability. A special rule provides that where the withdrawn employer is an individual, the employer's personal assets that would be exempt under bankruptcy law will be protected from employer liability.

126 Cong.Rec. S20195 (daily ed. July 29, 1980) (Joint Submission of Senators Williams and Long entered into Record by unanimous consent) (emphasis added).

Thus, while Congress has capped the withdrawal liability of corporations and individual proprietors and partners, the Trustees would have us believe that Congress intended at the same time to impose an absolute liability on owner-officers, even to the degree of stripping them of the meager protections afforded by bankruptcy laws.

Not only do we fail to divine such an intent, but given MPPAA's stated policy to alleviate conditions "which tend to discourage the maintenance and growth of multiemployer pension plans," MPPAA § 3, 29 U.S.C. § 1001a(c)(2), we find it doubtful that Congress would have required controlling shareholders to surrender the limited liability protection afforded by corporate law as a condition for allowing their companies to participate in such plans.

In view of all of the above, we conclude that it was error for the district court to hold that Daugherty and Hall are statutory employers within the meaning of Title IV and, as such, jointly liable with P & M for its withdrawal liability to the Plans.

### B. *Piercing the Corporate Veil*

Our holding that the withdrawal liability provisions of Title IV may not be interpreted to extend the liability of a corporate employer to its owner-officers does not mean that individuals who abuse their positions of control or who attempt to misuse the corporate form are immune from responsibility for their acts.

■ Courts that have refused to expand the meaning of "employer" to include officers and shareholders, in respect to both Titles I and IV, have noted that shareholders and officers may be held personally liable for their corporations' obligations under ERISA if they have acted as the "alter egos" of their corporations or otherwise met the requirements that justify "piercing the corporate veil" under traditional common law principles. *See, e.g., Sun-Up,* 634 F.Supp. 13, 18–19; *B.M.C. Coal,* 634 F.Supp. 74, 77; *Solomon,* 770 F.2d at 353–54; *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513, 515 (9th Cir.1983); *Combs v. Indyk,* 554 F.Supp. at 574–75.

At the same time, courts have noted that where plaintiffs in an ERISA action fail to allege that individual defendants should be held personally liable under such principles, or fail to introduce evidence that would support such a basis for liability, such claims must be dismissed. *Operating Engineers Pension Trust,* 726 F.2d at 515; *Moyers v. Frank P. Bauer Marble Co.,* 556 F.Supp. 192, 194 (N.D.Ill.1983); *Sun-Up,* at 20; *B.M.C. Coal,* 634 F.Supp. 74, 77.

■ In the instant case, the Trustees neither alleged such a basis for liability nor introduced any evidence that would support a summary judgment holding Daugherty and Hall personally liable for corporate obligations under principles permitting a piercing of the corporate veil. Therefore, we cannot find them individually responsible for P & M's withdrawal liability on this alternative basis.

### III. CONCLUSION

For the foregoing reasons, the order denying summary judgment to Daugherty and Hall and the order granting summary judgment to the Trustees are

*Reversed.*