**Irwin SOLOMON, et al., Plaintiffs,**

v.

**R.E.K. DRESS, et ano., Defendants.**

**No. 85 Civ. 2947 (SWK).**

United States District Court,
S.D. New York.

July 22, 1987.

Catherine Waelder, Max Zimny, New York City, for plaintiffs.

C. Evans Tilles, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs, the trustees of employee benefit plans, bring this action as fiduciaries of such plans pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, for the enforcement of provisions in a collective bargaining agreement ("Agreement") requiring employer contributions to union benefit plans.

Plaintiffs are Irwin Solomon, trustee of the I.L.G.W.U. National Retirement Fund ("Retirement Fund") and the I.L.G.W.U. Health Services Plan ("Health Services Plan"), and Samuel Byer, trustee of the Health and Welfare Fund of the Joint Board of Dress and Waistmakers' Union of Greater New York ("Welfare Fund"). Solomon and Byer are fiduciaries within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

The Retirement Fund is an "employee pension benefit plan" as defined in Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A).

The Health Services Plan and the Welfare Fund are both "employee welfare benefit plan[s]" as defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

Defendants are R.E.K. Dress, Inc. ("R.E.K."), a garment industry contractor which employed workers represented by local 107, I.L.G.W.U., and Richard Kirshy, R.E.K.'s sole shareholder and principal officer and its agent in relation to employee benefit plans. R.E.K. ceased doing business in 1985.

The trustees commenced this action on April 17, 1985, seeking to hold both defendants jointly and severally liable for their failure to make contributions to the benefit plans in accordance with the terms of the Agreement. Defendants R.E.K. and Kirshy were each served with a summons and a complaint on May 2. Kirshy appeared through counsel and filed an answer to the complaint. No appearance was made on behalf of R.E.K. Plaintiffs filed a motion for summary judgment against both defendants. Although Kirshy did not formally move to dismiss the case, his responsive memorandum asks that the complaint be dismissed on the ground that he is not an "employer". This Court granted plaintiffs' motion for default judgment as to defendant R.E.K. on October 30, 1985.

According to the complaint, R.E.K., a member of the Ladies' Apparel Contractors' Association, was bound by a collective bargaining agreement, from June 1, 1982 through May 31, 1985, between Ladies' Apparel Contractors' Association, Inc., and the United Better Dress Manufacturers' Association, Inc. on the one side and the International Ladies Garment Workers' Union ("I.L.G.W.U.") and Dressmakers' Joint Council on the other.

The agreement provided that whenever a contractor bound by the Agreement manufactured garments for any person, firm, or corporation not in contractual relation with I.L.G.W.U. or any I.L.G.W.U. affiliate, or otherwise not required to make payments to the Funds, then such contractor was obligated to make contributions to the Funds in a manner required by the Agreement (Art. 29, Sections B.2 and B.3). R.E.K. manufactured garments for jobbers and manufacturers, including Dunker's and Robby-Len, who were not contractually required to make contributions to the Funds; accordingly, R.E.K. was required to make contributions to the Funds for those works. Effective June 1, 1983, the Agreement required an employer to make contributions of 15.76125 percent of the gross amount paid by or due from the jobber or manufacturer (Art. 29, Section A.1.(a)).

On or about November 15, 1984, Arthur Burt, an accountant employed by I.L.G.W.U., audited the books and records of R.E.K. for the period from October 1983 to September 1984, and applying the applicable percentage to the amount paid by or due from those jobbers, determined that R.E.K. owed $49,778.01 to the funds.[1]

## DISCUSSION

The purpose of a motion to dismiss is to challenge the legal sufficiency of the statement of the claim for relief. *Oneida Indian Nation of New York v. New York*, 520 F.Supp. 1278, 1308 (N.D.N.Y.1981), *aff'd in part and rev'd in part on other grounds*, 691 F.2d 1070 (2d Cir.1982), *cert. denied*, 474 U.S. 823, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). Rule 12(b)(6) should be read in conjunction with Fed.R.Civ.P. 8(a)(2) which requires a plaintiff to set forth in his complaint a short plain statement of the claim showing that he is entitled to relief and demanding the relief to which he is entitled.

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, and

---

1. The plaintiffs' calculations are set forth in a chart attached to their accountant's affidavit. The calculations for the periods 12/83, 1/84, 2/84, and 5/84 are as follows: $1,298.91; $801.27; $5,123.35; $1,887.67.

The Court's calculations indicate that discounting the gross amounts by 15.76125 percent yields the following amounts: $6,278.54; $5,820.88; $10,168.95; and $12,082.84.

In any further paper submitted to the Court, plaintiffs should explain this apparent discrepancy.

must accept its allegation as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969). The court must also accept reasonable inferences from those facts in plaintiff's favor. *See Murray v. City of Milford,* 380 F.2d 468, 470 (2d Cir.1967). Dismissal should not be granted for mere technical defects or ambiguities. *See Arfons v. E. I. Du Pont de Nemours & Co.,* 261 F.2d 434, 435 (2d Cir.1958); *Nagler v. Admiral Corp.,* 248 F.2d 319, 322 (2d Cir.1957). The test is whether, in the light most favorable to the plaintiff, and with every doubt resolved in his favor, the complaint states any valid claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). *See Clay v. Martin,* 509 F.2d 109, 112 (2d Cir.1975); *Bishop v. Stoneman,* 508 F.2d 1224, 1225 (2d Cir. 1974); *Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir.1974). A complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim that would entitle him to relief. *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

The Court will consider first Kirshy's liability as an employer in light of the language and structure of ERISA, legislative history and congressional intent, and the case law analysis. It will then turn into a discussion of whether the circumstances of the case justify piercing the corporate veil.

## A. *Kirshy's Liability as an employer*

Plaintiffs seek to hold Kirshy liable, jointly and severally with R.E.K., as an "employer" under Section 3(5) of ERISA, 29 U.S.C. § 1002(5). The parties do not dispute that Kirshy was the president and sole shareholder of R.E.K. (See parties' stipulation of facts, p. 2). They do dispute whether this makes Kirshy an "employer" under ERISA.

## 1. *Language and Structure of ERISA*

The terms of ERISA itself do not indicate that a sole shareholder is an employer. ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). "Person" is further defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization or employee organization." *Id.* at § 1002(9).

The Pension Benefit Guarantee Corporation ("PBGC"), the corporation created under ERISA to administer its Title IV, agrees that ERISA does not indicate whether a shareholder may be liable, and suggests that the view should be determined by law:

> ERISA has no special rules regarding shareholder or officer liability.... [Rather], this issue is usually determined by state law which generally provides that shareholders are not liable for the debts of a corporation. You should, however, be aware that the laws of every state contain exceptions to this general principle.

PBGC Opinion Letters 82–038 (December 14, 1982) *quoted in Connors v. P. & M. Coal Co.,* 801 F.2d 1373, 1376 (D.C.Cir. 1986).

## 2. *Legislative History and Congressional Intent*

The legislative history of ERISA does not directly address the definition of "employer" used in the statute. *Trustees of Amalgamated Ins. Fund v. Danin,* 648 F.Supp. 1142, 1146 (D.Mass., 1986). However, nothing in the legislative history indicates that "Congress intended to expose corporate officers to liability for their employers' violation of ERISA; in fact, the exclusion of corporate officers from the extensive enumeration of persons points in the opposite direction." *Solomon v. Klein,* 770 F.2d 352, 354 (1985). *See also Combs v. Indyk,* 554 F. Supp. 573, 575 (W.D.Pa. 1982).

### 3. Case Law

In *Connors, supra,* the D.C. Circuit held that an officer-shareholder was not an "employer" within the meaning of ERISA. *See also Solomon,* 770 F.2d at 354 (employer does not include corporate officer or shareholder). The D.C. Circuit reasoned that "[p]ersonal financial responsibility may not be imputed to owner-officers simply because of the size of their ownership or the extent of their control over their company's affairs." *Connors,* 801 F.2d at 1377.

The First Circuit has a different view. In *Donovan v. Agnew,* 712 F.2d 1508 (1st Cir.1983), the Court held that a shareholder-officer could be liable under ERISA as an employer. The *Donovan* Court relied on two factors in reaching its decision. First, it analogized ERISA to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, which includes an officer-shareholder in the definition of employer. Second, the Court found that the dominant officer-shareholders in *Donovan* had "personally made decisions to continue operations despite financial adversity." Consequently, "considerations of economic reality" required that they be held personally liable for the company's obligation under ERISA. *Donovan,* 712 F.2d at 1514. This reading of ERISA's "employer" to include officer-shareholder is consistent with holdings of both the First Circuit and district courts in the First Circuit. *See, e.g. Alman v. Danin,* 801 F.2d 1 (1st Cir.1986); *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.,* 635 F.Supp. 9 (D.Mass.1984); *Rubenstein v. Tri-State Transport,* 646 F.Supp. 1 (D.Mass.1984).

### 4. Analysis

█ This Court finds that in light of its own reading of the structure and language of ERISA, its legislative history and congressional intent, and case law, the *Connors* decision to be more persuasive. As the D.C.Circuit has held:

> the mere fact that someone is a corporate officer or dominant shareholder ... [is not] enough to hold that person jointly and severally liable for the corporation's failure to pay or to impute to Congress

an intent to disregard the shield from personal liability which is one of the major purposes of doing business in a corporate form.

801 F.2d at 1377. Instead, Congressional intent seems to be to leave the question of shareholder liability to state law. PBGC Opinion Letters, *supra, quoted in Connors* 801 F.2d at 1376. In light of this, the "economic reality" test of *Donovan* is not helpful, as such economic realities do not generally render corporate shareholders liable for the debt of a corporation. Furthermore, the *Donovan* Court's reliance on the FLSA is unhelpful since ERISA, not the FLSA, is at stake, and ERISA's exclusion of officer-shareholder from the numeration of "person[s]" who were "employer[s]" is itself an indication that Congress intended them to be excluded from ERISA. Finally, this case is distinguished from *Donovan,* or there is no indication in the complaint that Kirshy "personally made decisions to continue operations despite [R.E. K.'s] financial adversity." *Donovan,* 712 F.2d at 1514.

In view of the above, this Court finds nothing within the language or structure of the ERISA statute that persuades it to accept plaintiffs' interpretation. The Court, therefore, concludes that the word "employer" as defined in ERISA, 29 U.S.C. § 1002(5), does not encompass an owner-officer acting within the legitimate scope of corporate responsibility. Thus, the complaint should be dismissed.

### B. Piercing the Corporate veil

█ The Court's holding that the word "employer" of 29 U.S.C. § 1002(5) does not include a sole corporate officer-shareholder does not mean that such owner-officer is immune from responsibility for his/her acts. *See Connors* 801 F.2d at 1378. Courts that have refused to expand the meaning of "employer" to include officers and shareholders have also noted that "shareholders and officers may be held personally liable for their corporations' obligations under ERISA if they have acted as the 'alter-ego' of their corporations or otherwise met the requirements that justi-

fy 'piercing the corporate veil' under traditional common law principles." *Id. See, e.g. Solomon,* 770 F.2d at 353–54; *Combs,* 554 F.Supp. at 574–75. Thus, Kirshy might nevertheless be liable if he has acted as the "alter-ego" of R.E.K. or otherwise met the requirements that justify piercing the corporate veil.

Although there is no definitive test under federal law to determine when the corporate form should be pierced, *Alman v. Danin,* 801 F.2d at 3, courts will pierce the veil when the corporation is used "to defeat public convenience, justify wrong, protect fraud, or defend crime." *In Re Gilbraltor Amusements, Ltd.,* 291 F.2d 22, 24 (2d Cir.1961). On the face of it, there is no indication that R.E.K. met any of the above requirements or was used as a "front" or a "mere conduit".

Other factors may be considered in determining whether to pierce a corporate veil. The relevant factors include:

> the failure to observe corporate formalities; non-payment of dividends; the insolvency of the debtor corporation at the time; siphoning of funds of the corporation from the dominant stockholder; non-functioning of other officers or directors; absence of corporate records; and the fact that the corporation is merely a facade for the operation of the dominant stockholder or stockholders.

*U.S. v. Pisani,* 646 F.2d 83, 88 (3d Cir. 1981); *see also DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681 (4th Cir.1976). Given the intricate analysis required and the Court's lack of detailed information, *e.g.,* the manner R.E.K. was set up and run by defendant Kirshy, this Court cannot determine whether or not R.E.K. should be pierced and Kirshy be held liable.

## CONCLUSION

Based upon the foregone discussion, defendant Kirshy was not an "employer" within the ERISA statute 29 U.S.C. § 1002(5). Kirshy might, nevertheless, be held liable if circumstances of the case warrant piercing the corporate veil and

holding Kirshy liable for the corporation's obligations under ERISA.

This complaint is thus dismissed without prejudice to plaintiffs' filing an amended complaint which pleads facts necessary to justify piercing the corporate veil.

SO ORDERED.