784 F.2d 926
 54 USLW 2488, 7 Employee Benefits Ca 1303
 TRUSTEES OF the AMALGAMATED INSURANCE FUND, Plaintiff-Appellee,
v.
GELTMAN INDUSTRIES, INC., Defendant-Appellant.
 Nos. 85-5720, 85-5907.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1986.
Decided March 7, 1986.
 
 Ellen Greenstone, Los Angeles, Cal., for plaintiff-appellee.
 Peter Gould, Washington, D.C., for amicus curiae.
 Jennie L. La Prade, Los Angeles, Cal., for defendant-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before ANDERSON, PREGERSON, and WIGGINS, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Geltman Industries, Inc., (Geltman) appeals from the district court's order confirming an arbitration award in favor of the Trustees of the Amalgamated Insurance Fund (Fund) and denying Geltman's motion to modify the award. The arbitration involved the determination of Geltman's withdrawal liability and any limitations that may apply under Employee Retirement Income Security Act (ERISA), as amended by the Multiemployer Pension Plan Amendment Act of 1980 (MPPAA). Geltman contends that the provisions of 29 U.S.C. Sec. 1405(a) should have been applied in determining its limitation on withdrawal liability rather than the provisions of 29 U.S.C. Sec. 1405(b).
 
 
 2
 The Fund cross-appeals from the district court's order denying the Fund's attorney's fees upon confirmation of the arbitration award in its favor. We affirm in part, reverse in part, and remand.
 
 I. FACTS
 
 3
 The facts are undisputed in this case. Geltman was involved in the garment industry. Its business had been in decline for many years. In February, 1982, Geltman ceased its operations because "continued losses had brought it precariously close to a negative net worth." Geltman negotiated a sale of its assets and applied the proceeds to the payment of creditors and shareholders in the liquidation of the business. After the sale and payment of liabilities, Geltman was left with $98,000 in cash and a note providing for payment to Geltman of $2,000 per month for 120 months, given in exchange for Geltman's lease rights. This money and the payments due under the note were distributed to Geltman's shareholders.
 
 
 4
 After Geltman's dissolution, the Fund notified Geltman that Geltman owed $416,508.12 in withdrawal liability. The parties arbitrated the issue of withdrawal liability pursuant to 29 U.S.C. Sec. 1401. The arbitrator awarded the entire liquidation value of Geltman ($98,000 in cash plus the note) to the pension plan pursuant to 29 U.S.C. Sec. 1405(b) and stated that 29 U.S.C. Sec. 1405(a) was not applicable to this case. The district court affirmed the award. Geltman appeals, asking that the district court's order be reversed and the arbitration award be modified in accordance with the provisions of 29 U.S.C. Sec. 1405(a). The Fund cross-appeals, claiming that the award of attorney fees is mandatory in this case, and that the district court erred in denying attorney fees on discretionary grounds.
 
 II. DISCUSSION
 
 5
 A. Standard of Review-Arbitrator's Conclusions
 
 
 6
 The clear authorization of 29 U.S.C. Sec. 1401(b)(2) for judicial review "to enforce, vacate, or modify the arbitrator's award" gives this court a right to review an arbitrator's legal rulings. Republic Industries v. Teamsters Joint Council, 718 F.2d 628, 641 (4th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). While the factual findings of an arbitrator are presumed correct, 29 U.S.C. Sec. 1401(c), the court may review de novo all conclusions of law. Bd. of Trustees v. Thompson Bldg. Materials, Inc., 749 F.2d 1396, 1405-06 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985). Statutory interpretation is a question of law subject to de novo review. United States v. Horowitz, 756 F.2d 1400, 1403 (9th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 74, 88 L.Ed.2d 60 (1985).
 
 
 7
 We are asked to review an arbitrator's ruling on the interpretation and application of pertinent sections of 29 U.S.C. Sec. 1405. Therefore, the proper standard of review is de novo.
 
 
 8
 B. Statutory Interpretation--29 U.S.C. Sec. 1405(a) or 29 U.S.C. Sec. 1405(b)
 
 
 9
 In this case of first impression for an appellate court, we find ourselves faced with three different interpretations of the provisions of 29 U.S.C. Sec. 1405.
 
 
 10
 Geltman contends that the arbitrator misinterpreted the scope of Sec. 1405(a) by restrictively interpreting that section to apply only when there is a sale of assets, but no insolvency. Geltman further argues that the arbitrator was erroneous in finding that this was an insolvency liquidation, and, therefore, that Sec. 1405(b) applied. Geltman finds fault with the arbitrator's preclusive interpretation of Sec. 1405(a) because (1) it contradicts the clear language of the statute; (2) it is inconsistent with legislative intent and the underlying policy of ERISA and MPPAA; and (3) it renders Sec. 1405(a)'s limitation virtually meaningless when read in conjunction with Sec. 1405(b).
 
 
 11
 A slightly different interpretation is advanced in an amicus brief submitted by the Pension Benefit Guaranty Corporation (PBGC). The PBGC argues that Sec. 1405(b) is inapplicable unless an employer is determined to be insolvent under Sec. 1405(d)(1) and that insolvency cannot be determined unless the reduction in withdrawal liability provided for in Sec. 1405(a) is first applied. PBGC argues, in the alternative, that even if the prerequisites of Sec. 1405(b) are met (i.e., Geltman is insolvent under Sec. 1405(d)(1)), Sec. 1405(b) does not preclude the application of Sec. 1405(a). The PBGC's interpretation gives the withdrawing employer the ability to choose that section which produces the lowest withdrawal liability.
 
 
 12
 The Fund argues that the plain language of Sec. 1405 mandates the application of Sec. 1405(b) and precludes the application of Sec. 1405(a) in insolvency liquidations. Therefore, according to the Fund, there is no choice for insolvent employers between the application of Sec. 1405(a) and Sec. 1405(b). The Fund contends that the application of Sec. 1405(b) to insolvency liquidation is consistent with legislative history and the context and purpose of the statute. The Fund further contends that Sec. 1405(d)(1) refers and applies to Sec. 1405(b) and because Sec. 1405(b) and Sec. 1405(a) are mutually exclusive, there is no need to determine the insolvency of the employer by first applying Sec. 1405(a).
 
 
 13
 We find the Fund's interpretation to be most consistent with the structure and plain language of the statute. Therefore, the proper analysis to be used in applying the various sections of 29 U.S.C. Sec. 1405 involves the following two-step process. First, it must be decided whether the employer is an insolvent employer. This is done by looking to the provisions of Sec. 1405(d)(1) without regard to Sec. 1405(a). Second, if the employer is insolvent, then it is necessary to go to the provisions of Sec. 1405(b) to determine any limitations on the employer's withdrawal liability. If, and only if, the employer is not insolvent, do the limitations in Sec. 1405(a) apply. Under this analysis, we find that Geltman was insolvent and, as a consequence, Sec. 1405(b) applies. Therefore, the district court was correct in its confirmation of the arbitration award in favor of the Fund.
 
 
 14
 We find support for our analysis in the plain language and the structure of the statute, as well as the underlying policies of ERISA and MPPAA. The plain language of 29 U.S.C. Sec. 1405,[1] indicates that both Sec. 1405(a) and Sec. 1405(b) could apply to the liquidation or dissolution of an employer. Section 1405(a)(2) refers to "the liquidation or dissolution value of the employer" after a sale or exchange to determine the unfunded vested benefits allocable to that employer. To qualify for the limitation provisions of Sec. 1405(a), there need only be a bona fide sale of all or substantially all of the employer's assets in an arms-length transaction to an unrelated party. Initially, it would appear that Geltman qualifies for Sec. 1405(a) limitations. However, it is clear that Sec. 1405(b) also applies to liquidations and dissolutions. This is apparent from the opening sentence which states, "[i]n the case of an insolvent employer undergoing liquidation or dissolution...." (Emphasis added). But, this section is more specific. It states that "[i]n the case of an insolvent employer ...," any limitations on withdrawal liability will be determined differently from those determined in Sec. 1405(a). Fundamental maxims of statutory construction require that a specific statutory section qualifies a more general section and will govern, even though the general provisions, standing alone, would encompass the same subject. Monte Vista Lodge v. Guardian Life Ins. Co. of America, 384 F.2d 126, 129 (9th Cir.1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1968). See also Markair, Inc. v. C.A.B., 744 F.2d 1383, 1385 (9th Cir.1984) (specific terms of statute override general terms). The fact that both Secs. 1405(a) and 1405(b) begin with "in the case of" is further evidence that the sections are to operate exclusive of each other and cover separate and distinct situations. Furthermore, while Sec. 1405(b) specifically mentions insolvency liquidations, Sec. 1405(a) makes no such reference. Therefore, if an employer is insolvent, the provisions of Sec. 1405(b) apply. If the employer is not insolvent, and the other conditions of Sec. 1405(a) are met, the provisions of that section apply.
 
 
 15
 There is implicit support for this analysis in Granada Wines v. New England Teamsters & Trucking, 748 F.2d 42 (1st Cir.1984). In that case it was held that "Sec. 4225(b) [Sec. 1405(b) ] governs only liquidations, and Sec. 4225(a) [Sec. 1405(a) ] governs sales of assets ..." Id. at 45. Also, in Dorn's Transp., Inc. v. I.A.M. Nat. Pension Fund, 578 F.Supp. 1222 (D.D.C.1984), aff'd, 753 F.2d 166 (D.C.Cir.1985), it was held that "[C]ongress further saw fit to balance the burdens to be assumed by the plans and the withdrawing employers, where an employer withdrawal was caused by insolvency (29 U.S.C. Sec. 1405(b)); or by a sale of assets (29 U.S.C. Sec. 1405(a)); ..." Id. at 1230. (Emphasis added).
 
 
 16
 Deciding that insolvent employers must proceed under the provisions of Sec. 1405(b) does not end the analysis. Now it must be decided whether or not Geltman was an insolvent employer. We find that under the plain language of Sec. 1405(d)(1), Geltman is an insolvent employer. This section states that "an employer is insolvent if the liabilities of the employer, including withdrawal liability under the plan (determined without regard to subsection (b) of this section [Sec. 1405(b) ], exceed the assets of the employer (determined as of the commencing of the liquidation or dissolution), ..." (Emphasis added).[2] According to the undisputed facts, Geltman's assets, after paying off all its liabilities, not including the withdrawal liability, included $98,000 in cash and a note worth $140,000 after 10 years of payments at $2,000 per month. These assets were exceeded by Geltman's withdrawal liability of $416,508.12. Thus, Geltman was insolvent under the plain language of Sec. 1405(d)(1).
 
 C. Attorney Fees
 
 17
 The district court denied the Fund's motion for an award of attorney fees on what appear to be discretionary grounds. The Fund contends that this was error because attorney fees are mandatory in this case under 29 U.S.C. Sec. 1132(g)(2) and 29 U.S.C. Sec. 1401(d). Furthermore, the Fund argues that even if the award of attorney fees is discretionary, the district court abused its discretion in denying the award.
 
 
 18
 Geltman argues that the award of attorney fees is discretionary in this case under 29 U.S.C. Sec. 1451(a) and the district court properly exercised its discretion in denying them. Geltman also claims that the Fund cannot raise the issue of mandatory attorney fees on appeal because it was not raised in the district court. Furthermore, Geltman contends that even if the issue of mandatory attorney fees is properly reviewable, the Fund is not entitled to them because Geltman was not delinquent in its withdrawal liability payments, and the Fund was not a prevailing party.
 
 1. Issue Raised for the First Time
 
 19
 Geltman argues that because the Fund brought its motion for attorney fees under 29 U.S.C. Sec. 1451(e), it cannot now argue for the first time on appeal that 29 U.S.C. Sec. 1132(g) mandates they be awarded. It is true that the Fund referred to 29 U.S.C. Sec. 1451(e), which allows for a discretionary award of attorney fees, in its reply to Geltman's Opposition to the Motion to Confirm Calculation of Attorney Fees and Costs. But, the Fund also referred to and quoted from 29 U.S.C. Sec. 1401(d) in its Memorandum of Points and Authorities in reply to Geltman's Opposition to the Application to Confirm the Arbitrator's Award. As we discuss below, Sec. 1401(d) requires mandatory attorney fees. Therefore, the issue of mandatory attorney fees was sufficiently raised in the district court.
 
 2. Mandatory Attorney Fees
 
 20
 Under ERISA, the award of attorney fees to a pension plan is mandatory in all actions to collect delinquent contributions. 29 U.S.C. Sec. 1132(g)(2); Lads Trucking v. Board of Trustees, 777 F.2d 1371, 1373 (9th Cir.1985); Operating Eng. Pen. Trust v. Beck Eng. & Surveying, 746 F.2d 557, 569 (9th Cir.1984); Operating Engineers Pension Trust v. Reed, 726 F.2d 513, 514 (9th Cir.1984); Kemmis v. McGoldrick, 706 F.2d 993, 997-98 (9th Cir.1983); San Pedro Fishermen's Welfare v Di Bernardo, 664 F.2d 1344, 1346 (9th Cir.1982).[3] This mandatory attorney fees provision applies in all actions to collect delinquent contributions owed under 29 U.S.C. Sec. 1145, including actions to collect unpaid employer withdrawal liabilities. Lads Trucking, 777 F.2d at 1374.
 
 
 21
 Geltman contends that because the Fund brought an action under Secs. 1401(b)(2) and 1451 to confirm the arbitrator's award, this is not an action to collect delinquent contributions under Secs. 1132 and 1145 and, therefore, the mandatory attorney fees provision does not apply.
 
 
 22
 However, 29 U.S.C. Sec. 1401(d) treats an employer's failure to make timely payments in accordance with the arbitrator's final decision as a delinquent contribution.[4] 29 U.S.C. Sec. 1401(d). As this court said in Lads Trucking, "[f]ees are mandatory in a collection action where there has been 'any failure of the employer to make any withdrawal liability payments within the time prescribed.' " Lads Trucking, 777 F.2d at 1374 (quoting 29 U.S.C. Sec. 1451(b)) (emphasis added).
 
 
 23
 Geltman further argues that it was not delinquent in its contributions because it was not required to make any payments pending a final decision by the arbitrator. However, "[w]e have enforced the requirement of payment during arbitration." Lads Trucking, 777 F.2d at 1375; Bd. of Trustees v. Thompson Bldg. Materials, Inc., 749 F.2d 1396 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985). See also Textile Workers Pension v. Standard Dye & Finishing, 725 F.2d 843 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); Trustees of Retirement Fund v. Lazar-Wisotzky, Inc., 550 F.Supp. 35, 38 (S.D.N.Y.1982), aff'd, 738 F.2d 419 (2d Cir.1984). Under ERISA, an employer must make payments within 60 days of the pension plan's demand, regardless of the pendency of arbitration. 29 U.S.C. Sec. 1399(c)(2); Lads Trucking, 777 F.2d at 1374. " '[A]ny failure of the employer to make any withdrawal liability payment within the time prescribed' shall be a delinquency, 29 U.S.C. Sec. 1451(b), with mandatory attorneys' fees to be awarded to the pension plan, 29 U.S.C. Sec. 1132(g)(2)." Lads Trucking, 777 F.2d at 1375.
 
 
 24
 Geltman also points out that the arbitrator's initial decision contemplated payment to the Fund within 30 days of the date of the decision. The Fund's application for confirmation of the arbitrator's award was filed only 29 days after the award was issued. Therefore, argues Geltman, no delinquency existed at that time. However, Lads Trucking indicates that a delinquency is not determined in relation to the timing of arbitration. Rather, an employer is delinquent 60 days from the pension plan's demand. Geltman had made no payments within that 60-day period. Therefore, it was delinquent.
 
 
 25
 Finally, Geltman argues that the Fund was not a prevailing party and may not be awarded attorney fees. We disagree. Sections 1132, 1145, and 1401(d) all contemplate that mandatory attorney fees shall be awarded to the pension plan if there is any failure of the employer to make any withdrawal liability payment. It has been admitted by all parties that regardless of the outcome of the case, Geltman owed some withdrawal liability. Therefore, Geltman's failure to make any withdrawal liability payment within the time prescribed requires us to award the pension plan mandatory attorney fees.
 
 
 26
 For the reasons stated above, we AFFIRM the district court's order confirming the arbitration award in favor of the Fund, REVERSE the district court's order denying the Fund attorneys' fees, and REMAND.
 
 
 
 [1]
 Sec. 1405. Limitation on withdrawal liability
 (a)(1) In the case of bona fide sale of all or substantially all of the employer's assets in an arm's-length transaction to an unrelated party (within the meaning of section 1384(d) of this title), the unfunded vested benefits allocable to an employer (after the application of all sections of this part having a lower number designation than this section), other than an employer undergoing reorganization under Title 11 or similar provisions of State law, shall not exceed the greater of--
 (A) a portion (determined under paragraph (2)) of the liquidation or dissolution value of the employer (determined after the sale or exchange of such assets), or
 (B) the unfunded benefits attributable to employees of the employer.
 (2) For purposes of paragraph (1), the portion shall be determined in accordance with the following table:
 * * *
 (b) In the case of an insolvent employer undergoing liquidation or dissolution, the unfunded vested benefits allocable to that employer shall not exceed an amount equal to the sum of--
 (1) 50 percent of the unfunded vested benefits allocable to the employer (determined without regard to this section), and
 (2) that portion of 50 percent of the unfunded vested benefits allocable to the employer (as determined under paragraph (1)) which does not exceed the liquidation or dissolution value of the employer determined--
 (A) as of the commencement of liquidation or dissolution, and
 (B) after reducing the liquidation or dissolution value of the employer by the amount determined under paragraph (1).
 
 
 [2]
 The record does not reveal what Geltman's assets and liabilities were at the "commencement of the liquidation" of its business as contemplated by Sec. 1405(d)(1). However, we can infer from the facts in the record that Geltman's liabilities, including withdrawal liability, exceeded Geltman's assets even at that point
 
 
 [3]
 Section 1132(g)(2) provides that:
 "[i]n any action under this subchapter ... to enforce section 1145 of this title [Sec. 1145 pertains to delinquent contributions] in which a judgment in favor of the plan is awarded, the court shall award the plan--
 * * *
 "(D) reasonable attorney's fees and costs of the action, to be paid by the defendant...."
 
 
 [4]
 "In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. Sec. 1451(b)