Joseph P. CONNORS, Sr., et
al., Plaintiffs,

v.

DARRYLL WAGGLE CONSTRUCTION,
INC., et al., Defendants.

Civ. A. No. 85–2356.

United States District Court,
District of Columbia.

March 26, 1986.

H. Van Sinclair, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiffs.

William H. Howe, Richard A. Steyer, Loomis, Owen, Fellman & Howe, Washington, D.C., for defendants.

## OPINION

JUNE L. GREEN, Senior District Judge.

This is an action on behalf of the United Mine Workers of America 1974 Pension Plan ("1974 Plan") to collect withdrawal liability, interest, and liquidated damages under the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1001 *et seq.* (1982).[1] Defendants Darryll Waggle Construction, Inc. ("DWC") and Darryll Waggle ("Waggle") have filed a motion to dismiss the complaint. For the reasons set forth below, the Court grants defendants' motion in part and denies it in part.

### I. *Background*

Plaintiffs are trustees of the 1974 Plan, which is a multiemployer pension plan within the meaning of sections 1002(37) and 1301(a)(3). DWC is an Illinois corporation that is or was engaged in mine related construction at sites in Illinois. Waggle is a citizen of Colorado and is or was an officer and shareholder of DWC.

DWC was a party to the National Coal Mine Construction Agreements of 1974, 1978, and 1981. Pursuant to those agreements, DWC was obligated to and did make contributions to the 1974 Plan. Plaintiffs allege that DWC ceased covered operations under the 1974 Plan about October 1980. As a result of this cessation, DWC withdrew from the 1974 Plan in a complete withdrawal, as that term is defined in Section 1383(a). Verified Complaint ¶¶ 7, 8.

DWC was involuntarily dissolved on December 1, 1981, by the Secretary of State of Illinois for failure to pay annual franchise taxes. Following this event, a joint special meeting of the shareholders and directors of DWC was held on June 4, 1982. At this meeting a plan for complete liquidation of DWC was adopted which was to be completed not later than June 24, 1983.

Plaintiffs attempted unsuccessfully on three occasions in 1983 to notify DWC of the amount of its withdrawal liability and schedule of payments and to demand payment consistent therewith, pursuant to section 1399(b)(1). Finally, by letter dated August 17, 1983, sent by certified mail to DWC at an address for individual defendant Waggle in Colorado, plaintiffs were able to notify DWC of its liability to the 1974 Plan in accordance with section 1399(b)(1).

By letter dated October 10, 1983, a representative of DWC informed plaintiffs that DWC had been involuntarily dissolved and that there were no existing assets. In addition, DWC's representative requested review of the withdrawal liability determination, pursuant to section 1399(b)(2)(A). Upon review, plaintiffs decided against changing their withdrawal liability determination or schedule of payments and so notified DWC on May 10, 1983, pursuant to section 1399(b)(2)(B).

DWC failed to initiate arbitration of plaintiffs' decision on review and failed to make any withdrawal liability payments as required by sections 1399(c)(2) and 1401(a)(1). Plaintiffs then advised DWC that the payments were past due and if DWC failed to cure the delinquency, it would be in default and the entire amount of its withdrawal liability would be due and payable without further demand, pursuant to section 1399(c)(5). Plaintiffs filed the instant suit on July 22, 1985.

In their motion to dismiss, defendants argue that under the Illinois statute which was in effect at the time of DWC's involuntary dissolution, Ill.Ann.Stat. Ch. 32 § 157.-

---

1. This opinion will cite to Title 29 (in the form "Section ___"), rather than to ERISA's internal numbering.

94 (1975), a dissolved corporation could be sued for liabilities incurred prior to dissolution only if suit was commenced within two years after the date of dissolution. In addition, defendants assert that Waggle is not an "employer" within the meaning of section 1002(5) and is, therefore, not subject to this Court's jurisdiction.

## II.  *Conclusions of Law*

A.  *Action Against DWC Is Not Barred by the Illinois Corporate Survival Statute*

Section 94 of the Illinois Business Corporation Act states, in pertinent part, that:

> The dissolution of a corporation ... by the issuance of a certificate of dissolution by the Secretary of State, ... shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution, if action or other proceeding thereon is commenced within two years after the date of such dissolution.

Ill.Ann.Stat. Ch. 32, § 157.94 (1975).[2] Defendants contend that plaintiffs are barred from bringing this suit because they did not file any "action or other proceeding" until July 22, 1985, over three and one-half years after DWC had been dissolved. While it is true that this lawsuit was filed well after the statutory survival period had expired, the Court finds unpersuasive defendants' argument that no "action or other proceeding" was commenced within the two-year period.

Under section 1381(a) of ERISA, an employer who withdraws from a multiemployer pension plan is subject to withdrawal liability to the plan. Section 1399(b)(1) requires the plan to give notice and to demand payment of withdrawal liability in accordance with a schedule of payments "as soon as practicable" after an employer's withdrawal. A withdrawing employer may then request review by the plan within 90 days of receipt of the notice and demand. Section 1399(b)(2)(A). After completion thereof, the plan must notify the employer of its decision on review under section 1399(b)(2)(B).

If the employer disputes the fact or amount of withdrawal liability, it may initiate arbitration, but only within the 60-day period ending after the earlier of (1) the date of notification to the employer of the plan's decision on review, or (2) 120 days after the date of the employer's request for review, if any. Section 1401(a)(1).

Even if the employer seeks review or initiates arbitration, payments must be made to the plan during the pendency of the review or arbitration. Sections 1399(c)(2), 1401(d). Failure to make any withdrawal liability payment when due, if not cured within 60 days after receipt of notice of such failure, results in default. Section 1399(c)(5). Upon default, the plan "may require immediate payment of the outstanding amount of [the] employer's withdrawal liability" plus interest. *Id.* In addition, the plan may file a complaint for that amount in a state or federal court of competent jurisdiction. Section 1401(b).

Upon examination of ERISA's procedural scheme, it is clear that an action for withdrawal liability under section 1401(b) is commenced by a statutory notice and demand for payment as required by section 1399(b)(1). Plaintiffs sent, and defendants acknowledge receiving, a section 1399(b)(1) notice and demand by certified mail, dated August 17, 1983. Verified Complaint ¶ 11; Defendants' Motion to Dismiss at 2. Noting the comprehensive sweep of ERISA and Congress' expressed desire of enforcing employer-sponsored retirement income programs, the Court need not perform semantic somersaults in concluding that the August 17, 1983, notice and demand constitutes an "action or other proceeding" for purposes of the Illinois

---

**2.** This statute was amended on November 4, 1983, to extend the period of corporate survival to 5 years. Ill.Ann.Stat. Ch. 32, § 12.80 (1985). This, however, is of no consequence here as the Court finds DWC liable under the earlier version which was indisputably in effect at the time of DWC's dissolution.

statute. *See, e.g., Pension Benefit Guarantee Corp. v. Ouimet Corp.,* 630 F.2d 4, 8–9 (1st Cir.1980) (ERISA imposes comprehensive oversight of employee benefit plans in place of piecemeal federal labor laws and state regulation). Accordingly, the Court will not dismiss the complaint as to defendant DWC.

**B. *The Court Lacks Personal Jurisdiction Over Defendant Waggle***

 The complaint alleges a cause of action against Darryll Waggle, individually, on the theory that as a corporate officer and shareholder of defendant DWC, he acted directly or indirectly in the interest of DWC and, therefore, is an "employer" within the meaning of section 1002(5). Plaintiffs seek to characterize Waggle as an "employer" so as to bring him under section 1381(a), which would make him liable to the 1974 Plan for withdrawal liability.

Plaintiffs contend that the definition of "employer" in Title I of ERISA (section 1002(5)) applies to the withdrawal liability provisions of Title IV. *See Central Pennsylvania Teamster's Pension Fund v. Service Group, Inc.,* 6 E.B.C. 1491, 1492 (E.D. Pa.1985). The Court acknowledges that ERISA and MPPAA can be fairly characterized as drastic social legislation. *See, e.g., Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 725 F.2d 843, 847–49, 852–53 (2d Cir.1984) (in one stroke Congress transferred responsibility for employees' unfunded vested benefits to withdrawing employers); H.R. No. 869(I), 96th Cong., 2d Sess. 54–56, *reprinted at* 1980 U.S.Code Cong. & Ad.News 2918, 2924. Nevertheless, the Court's research indicates no intention on the part of Congress to disregard the usual immunity of corporate officers from liability for corporate activities.

Thus, the Court finds persuasive the reasoning in *Solomon v. Klein,* 770 F.2d 352 (3d Cir.1985), *Connors v. B.M.C. Coal Co.,* 634 F.Supp. 74 (D.D.C.1986), and *Combs v. Sun-Up Coal Co., Inc.,* 634 F.Supp. 13 (D.D.C.1985). Those cases held that the

term "employer" as defined in ERISA, section 1002(5), does not include a corporate officer. In other words, neither a corporate officer nor the holder of a large percentage of the stock of a corporation can be held liable for withdrawal payments under ERISA. This reasoning is especially true "[i]n the limited confines of this case, ... which specifically does not involve an inquiry into alter ego...." *Solomon v. Klein,* 770 F.2d at 354. *But see Connors v. P & M Coal Co.,* No. 84–0560 (D.D.C. Feb. 6, 1985); *Massachusetts State Carpenters Pension Fund v. Atlantic Diving Co.,* 635 F.Supp. 9 (D.Mass.1984).

The Court dismisses the complaint against defendant Waggle, as it lacks personal jurisdiction over him.