The TRUSTEES OF the AMALGAMATED COTTON GARMENT AND ALLIED INDUSTRIES FUND, Plaintiff,

v.

BALTIMORE SPORTSWEAR, INC., Defendant.

No. 84 Civ. 1602 (RO).

United States District Court, S.D. New York.

April 15, 1986.

Mark Schwartz, New York City, for plaintiff.

Richard E. Schrier, Garden City, N.Y., for defendant.

OWEN, District Judge.

This ERISA action stems from a dispute between a multiemployer retirement plan and an employer which is in the process of going out of business. Plaintiff, the retirement plan, sues the employer to recover the so-called "withdrawal liability" that an employer is required to pay a retirement plan upon withdrawal.

Under the provisions of the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. § 1381 *et seq.*, an employer that leaves a pension plan is required to pay a certain sum of money (the

"withdrawal liability") in order to cover presently vested, but not yet funded, pension rights of the employer's employees or former employees.

In order to protect the retirement plans, the congressional scheme requires that the plan—in the first instance—calculate the amount and payment terms of the withdrawal liability pursuant to statutory guidelines. The withdrawing employer then may dispute this amount, in arbitration, but it is required to continue to pay the quarterly installments pending the results of the arbitration. 29 U.S.C. § 1401(d).

To protect the employer, the amount of each quarterly payment is related to the size of the payments the employer made to the plan prior to its withdrawal, rather than to the total amount due.

In the instant action, it is undisputed that defendant, the employer, has not paid *any* of the quarterly payments due on its withdrawal liability as calculated by plaintiff, the pension plan.. Furthermore, while defendant formally requested arbitration, it never prepared the submission statement required to actually initiate arbitration. Finally, according to defendant, its net worth has dropped by half, from $50,000 to $25,000, during the pendency of this suit. Plaintiff therefore moves for partial summary judgment for the overdue quarterly payments.

■ Defendant responds that it should not be required to pay the withdrawal liability for two reasons. First, the total amount demanded, $105,000, is greater than its net worth ($50,000) as reported in an uncertified statement of net worth that it supplied to the plan, and thus it will be unable to defend this action if it pays. I cannot give effect to this position. The congressional scheme clearly contemplates precisely this situation and is intended to require the employer to continue making quarterly payments rather than dissipate its assets in other ways (such as the $170,000 which defendant reports paying to its officers last year). In any case, defendant has paid *none* of the quarterly payments and has not initiated arbitration. Under

the circumstances, it should not be heard to complain that payment of its *full* obligation would be excessive.

■ Second, defendant claims that 29 U.S.C. § 1405 both limits its liability and is not subject to the arbitration requirement. Therefore, it claims, it need not pay anything currently. Section 1405 limits but does not eliminate the withdrawal liability of insolvent employers undergoing liquidation. The employer here has not alleged either that it is undergoing liquidation or that, in the absence of its withdrawal liability, it is insolvent. Section 1405, therefore, does not apply to this employer.

■ Even did defendant come under § 1405 and even if under § 1405 it would have a lower total withdrawal liability (also not shown), defendant *still* would be required to raise this claim in arbitration. Defendant correctly points out that § 1405 is not explicitly listed as covered by § 1401(a)(1)'s arbitration requirement. But see § 1401(a)(3)(A). However, an arbitrator would never be able to determine the total liability of an employer without considering the effect of § 1405. Thus, if § 1405 were not arbitrable, no arbitration would ever be able to go forward until after resolution of a proceeding in the United States Courts. Since that cannot have been the congressional intent, it is clear that the employer is required to present claims under § 1405, like any other defenses it may have, to the arbitrator. Since arbitration—not the District Court—is the correct forum for resolution of claims under § 1405, I need not even consider whether defendant has presented enough evidence to establish that it is benefited by the clause.

Furthermore, I see no reason, and defendant offers none, to think that Congress meant to exempt this claim—alone of all the possible defenses that an employer might raise—from the requirement of § 1401(d) that the employer continue to make quarterly payments pending final determination of the total amount due.

■ Even under the most generous reading of § 1405, this employer owes plaintiff a substantial sum (at least half and proba-

bly more of the unfunded vested liability attributable to its employees). Congress has weighed the possible harm to employers of overpayment followed by a refund and determined that this harm is less than the likely damage to the pension plans and the workers who are dependent on them if employers need make no payment until final resolution of all disputes. The statute accordingly requires that defendant make all of its quarterly payments until its total liability is finally determined. If at arbitration it establishes that it has overpaid, the employer will then receive a refund.

Therefore, no justification appearing for the defendant's failure to make any payments at all, partial summary judgment is granted for the delinquent quarterly payments, together with interest, attorneys' fees and costs, as is mandatory under 29 U.S.C. §§ 1451(b) and 1132(g)(2). The cross motion for discovery to help defendant determine whether it will actually benefit from § 1405's limitation is denied as premature since this issue can be raised only in an arbitration proceeding, should defendant chose to proceed in one.

Submit formal order on notice.